E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Environmental Crime and
Consumer Protection Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0698/2426
     Facsimile: (213) 894-6269/0141
     E-mail:    jeff.mitchell@usdoj.gov
                daniel.boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 22-394(A)-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY IN FURTHER SUPPORT OF NOTICE OF MOTION AND MOTION FOR ORDER RE: DEFENDANT'S KNOWING BREACH OF PLEA AGREEMENT |
| v. | |
| YASIEL PUIG VALDES, | Hearing Date: July 19, 2023 |
| Defendant. | Hearing Time: 2:30 p.m. |
| | Location:    Courtroom of the Hon. Dolly M. Gee |

        Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Jeff Mitchell and

Dan G. Boyle, hereby files this Reply in further support of its

Motion for an Order finding that defendant Yasiel Puig Valdes

knowingly breached his plea agreement with the government in this

matter.

1

2          This Reply is based upon the attached memorandum of points and

3     authorities, the files and records in this case, and such further

4     evidence and argument as the Court may permit.

5

6      Dated: July 12, 2023                    Respectfully submitted,

7                                              E. MARTIN ESTRADA
                                               United States Attorney
8
                                               MACK E. JENKINS
9                                              Assistant United States Attorney
                                               Chief, Criminal Division
10

11                                                   */s/*
                                               _____
12                                             DAN G. BOYLE
                                               JEFF MITCHELL
13                                             Assistant United States Attorneys

14                                             Attorneys for Plaintiff
                                               UNITED STATES OF AMERICA
15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        ii

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   ARGUMENT.......................................................1

      A.   The Law of the Case Doctrine Bars Defendant's Attempt
           to Retroactively Withdraw from the Plea Agreement.........1

      B.   Defendant's New Arguments Ignore Intervening Supreme
           Court Precedent...........................................4

      C.   Defendant has Failed to Rebut the Certifications of
           Voluntariness he Signed in the Plea Agreement.............7

      D.   Defendant Has Not Identified Any Purported
           "Exculpatory Evidence"...................................10

      E.   Defendant's Evidentiary Objections Lack Merit...........12

III.  CONCLUSION....................................................15

iii

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

Askins v. U.S. Dep't of Homeland Sec.,
  899 F.3d 1035 (9th Cir. 2018) ................................... 2
4

Bordenkircher v. Hayes,
  434 U.S. 357 (1978) ........................................... 9
5

East Bay Sanctuary Covenant v. Trump,
  950 F.3d 1242 (9th Cir. 2020) ................................. 3
6

Mabry v. Johnson,
  467 U.S. 504 (1984)) .......................................... 5
7

Matter of Requested Extradition of Kirby,
  106 F.3d 855 (9th Cir. 1996) .................................. 9
8

Puckett v. United States,
  556 U.S. 129 (2009) ........................................ 5, 6
9

Thomas v. Bible,
  983 F.2d 152 (9th Cir. 1993) .................................. 3
10

United States v. Fagan,
  996 F.2d 1009 (9th Cir. 1993) ................................. 4
11

United States v. Grant,
  117 F.3d 788 (5th Cir. 1997) .................................. 6
12

United States v. Hyde,
  520 U.S. 670 (1997) ........................................... 5
13

United States v. Mitchell,
  633 F.3d 997 (10th Cir. 2011) ................................ 13
14

United States v. Newbert,
  504 F.3d 180 (1st Cir. 2007) ................................. 10
15

United States v. Ocanas,
  628 F.2d 353 (5th Cir. 1980) .................................. 5
16

United States v. Savage,
  978 F.2d 1136 (9th Cir. 1992) ................................. 5
17

United States v. Sua,
  307 F.3d 1150 (9th Cir. 2002) ................................ 13
18

United States v. Sylvester,
  583 F.3d 285 (5th Cir. 2009) ................................. 13
19

United States v. McTiernan,
  2010 WL 11667960 (C.D. Cal. July 7, 2010) ................ 11, 12

23

**Statutes**

24

18 U.S.C. § 3501.............................................. 14

25

**Rules**

26

Federal Rule of Evidence 403.................................. 12

27

28

iv

1

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2

**I.     INTRODUCTION**

3        This Court held months ago that defendant breached his agreement

4   with the government in this matter (the "Plea Agreement"), a holding

5   which is the law of the case. Now defendant seeks to revisit that law

6   of the case and argue that the Plea Agreement, and accordingly, the

7   Court's order finding him in breach, are actually null and void –

8   without so much as acknowledging the law of the case doctrine.

9   Alternately, he argues that his execution of the Plea Agreement was

10  not voluntary, but instead of offering a declaration from defendant

11  himself, he seeks to evade cross-examination by offering declarations

12  from others (his manager and a retained expert) as to what defendant

13  *might* have been thinking at the time he agreed to plead guilty. But

14  third-party speculation is no substitute for defendant's own

15  testimony, and certainly does not overcome defendant's certifications

16  included in the Plea Agreement. He should be held to the agreement

17  and waivers he signed – and benefitted from – and the government's

18  motion should be granted.

19  **II.    ARGUMENT**

20          **A.    The Law of the Case Doctrine Bars Defendant's Attempt to**
             **Retroactively Withdraw from the Plea Agreement**

21

22        On January 6, 2023, this Court found that "[d]efendant did not

23  plead guilty, despite agreeing to do so as part of his plea, and

24  accordingly, breached the [Plea Agreement]." ECF No. 51, at 3. While

25  defendant opposed the government's motion for a finding of breach at

26  that time (<u>see</u> ECF No. 41), at no point did defendant ever suggest

27  that the Plea Agreement was non-binding or had been withdrawn. To the

28  contrary, defendant strenuously argued that the Plea Agreement

continued to bind the government:

- "A plea agreement is a contract, to which the Court is not a party. Like any other party to a contract, to merit the Court's intervention, the government must prove the elements of a breach of contract…" (ECF No. 41, at 1);

- "If the government were to seek a superseding indictment, defendant Puig would possibly have a breach motion because he would have damages . . . Like any party to a contract, however, Puig might or might not decide to assert such breach, in which case the Court might never be asked to intervene" (id., at 6-7);

- "[T]he defense may seek recission of the plea agreement, or at least may ask the Court not to grant the government specific enforcement of paragraph 22, asserting contractual defenses such as unconscionability, public policy, undue influence, nondisclosure, or mistake." Id. at 8.

In sum, defendant argued that (1) contract law governed the Plea Agreement, (2) the Court was not a party to the Plea Agreement, and (3) that the government remained bound by the Plea Agreement until it could establish the elements of a breach. The Court agreed with defendant in part, for example, agreeing that "[u]ntil the Government is so relieved, it is bound by its obligation not to prosecute Defendant for obstruction of justice" (ECF No. 51, at 3), but ultimately held that defendant had breached the plea Agreement. Id. Accordingly, that holding is the law of the case here.

The law of the case doctrine "generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Askins v. U.S. Dep't of Homeland Sec., 899 F.3d 1035, 1042 (9th Cir. 2018) (cleaned up). Under the doctrine, courts are "generally precluded

2

1  from reconsidering an issue that has already been decided by the same

2  court, or a higher court in the identical case, absent a material

3  change in circumstances." Thomas v. Bible, 983 F.2d 152, 154 (9th

4  Cir. 1993). "For the doctrine to apply, the issue in question must

5  have been decided either expressly or by necessary implication in the

6  previous disposition." Id. (internal quotation marks and alterations

7  omitted). If an issue has already been decided, then reconsideration

8  of the order is permitted only where "the prior decision is 'clearly

9  erroneous' and enforcing it would create 'manifest injustice';

10 intervening, controlling authority encourages reconsideration; or

11 substantially different evidence is produced at a later merits

12 trial." East Bay Sanctuary Covenant v. Trump, 950 F.3d 1242, 1262

13 (9th Cir. 2020).

14        Defendant ignores the law of the case doctrine, and instead,

15 suggests that the Court should "amend" its prior order. See Opp. at

16 9. Defendant does not address the standard for revisiting the law of

17 the case, or argue how he has met this standard,[1] but even if he had,

18 defendant could not show a manifest injustice here. First, as

19 addressed herein, defendant's new argument that the Plea Agreement

20 was non-binding are not "intervening, controlling law," because they

21 long predate the Court's breach order and ignore subsequent and

22 binding Supreme Court precedent. See Section II. B, infra. Second,

23 defendant cannot show a manifest injustice in adhering to the law of

24 the case here, because he received at least some of the benefit of

25

26        _____

27        [1] Defendant suggests in a footnote that his counsel simply
   didn't know about this case law at the time (Opp. at 8 n.4), but does
   not explain why his counsel's purported ignorance of the law would
28 satisfy the law of the case doctrine.

3

the bargain he sought through the Plea Agreement. As discussed below, see Section II.C, infra, defendant's primary contention is that he faced a "Hobson's choice" (Opp. at 12) between going to trial or accepting a plea agreement that would allow him to finish his professional baseball season in South Korea without fear of arrest or extradition. See Opp. at 12-13. Of course, defendant was able to complete his baseball season without arrest because he signed the Plea Agreement and, as detailed in prior filings, persuaded the government to keep the matter under seal until his voluntary return. But once the baseball season was complete, defendant changed his position and refused to plead guilty as he had promised to do – leading to the Court's finding of breach. There is no manifest injustice in refusing to allow defendant to change his position after he already received one of the very benefits he sought.

## B. Defendant's New Arguments Ignore Intervening Supreme Court Precedent

Separate from the law of the case doctrine, defendant's new attempt to invalidate the waivers in the Plea Agreement relies on prior law which has since been undermined by intervening Supreme Court precedent.

In his Opposition, defendant now argues that "[t]he Ninth Circuit has repeatedly held that a plea agreement that has not been offered in open court and approved by the Court – like the one here -- is unenforceable." Opp. at 1. Defendant largely relies on two earlier Ninth Circuit cases for this proposition: United States v. Fagan, 996 F.2d 1009, 1013 (9th Cir. 1993) and United States v. Savage, 978 F.2d 1136, 1138 (9th Cir. 1992). A close reading of this

4

precedent, and intervening Supreme Court jurisprudence, shows that the <u>Fagan/Savage</u> line of cases does not support defendant's position.

For example, as defendant recognizes, <u>Fagan</u> explicitly rested on the Supreme Court's decision in <u>Mabry v. Johnson</u>, 467 U.S. 504, 507-08 (1984)). <u>See</u> Opp. at 6. What defendant omits, however, is that <u>Mabry</u> was largely relegated to dicta and implicitly overruled by the Supreme Court in <u>Puckett v. United States</u>, 556 U.S. 129, 138 (2009) ("We disavow any aspect of the <u>Mabry</u> dictum that contradicts our holding today."). In <u>Puckett</u>, the Supreme Court forcefully reiterated that plea agreements – including failures to perform – are governed by contract law:

> Although the analogy may not hold in all respects, plea bargains are essentially contracts. When the consideration for a contract fails—that is, when one of the exchanged promises is not kept—we do not say that the voluntary bilateral consent to the contract never existed, so that it is automatically and utterly void; we say that the contract was broken. The party injured by the breach will generally be entitled to some remedy, which might include the right to rescind the contract entirely, but that is not the same thing as saying the contract was never validly concluded.

<u>Puckett</u>, 556 U.S. at 137 (internal citations omitted). The government respectfully submits that <u>Puckett</u> is binding here: where a defendant refuses to plead guilty as agreed, the contract has been breached – it does not become "automatically and utterly void." <u>Id</u>.[2] While the

---

[2] Similarly, defendant's reliance on <u>Savage</u> is misplaced. As defendant acknowledges, <u>Savage</u> adopted the Fifth Circuit's reasoning in <u>United States v. Ocanas</u>, 628 F.2d 353 (5th Cir. 1980). <u>See</u> Opp. at 8. Again, defendant omits key subsequent history: <u>Ocanas</u> was recognized by the Fifth Circuit as overruled by the Supreme Court's decision in <u>United States v. Hyde</u>, 520 U.S. 670 (1997). <u>See</u> <u>United States v. Grant</u>, 117 F.3d 788, 791 n.4 (5th Cir. 1997) ("[M]ore importantly, [Ocanas] is undermined by the Supreme Court's decision in <u>Hyde</u>.").

*(footnote cont'd on next page)*

1   non-breaching party may opt to "rescind the contract entirely," that

2   is merely one remedy available. Id.

3        Read in context with Puckett, the Fagan/Savage line of cases

4   stand for the narrower proposition that "a court cannot force a

5   defendant to plead guilty because of a promise in a plea agreement."

6   Savage, 978 F.2d 1136, 1137 (9th Cir. 1992)(internal citation

7   omitted). Of course, that is not the issue here, where the question

8   is whether terms of a plea agreement ancillary to the agreement to

9   plead guilty remain in force.

10       Furthermore, the circumstances expressed in Savage – that

11  "neither party contemplates any benefit from the agreement unless and

12  until the trial judge approves the bargain and accepts the guilty

13  plea" (978 F.2d at 1138) – are not present with defendant's plea

14  agreement. Here, the Plea Agreement states that "that the Court and

15  the United States Probation and Pretrial Services Office are not

16  parties to this agreement," and that the Plea Agreement is effective

17  "upon signature and execution of all required certifications by

18  defendant, defendant's counsel, and an Assistant United States

19  Attorney." See ECF 6 ¶¶ 20, 23. In other words, however the

20  Fagan/Savage line of cases may be construed, defendant here

21  specifically agreed that terms of the Plea Agreement would be binding

22  upon signing. He should be held to the terms he agreed to.

23

24

25

---

26       Defendant actually cites to Hyde, but fails to grasp the
    significance of its holding; in Hyde the Supreme Court held that a
27  rejected plea is not void ab initio, but rather gives the defendant
    "the right to back out of his promised performance." See Opp. at 7
28  (citing Hyde, 520 U.S. 677-78).

1

2

**C.     Defendant has Failed to Rebut the Certifications of Voluntariness he Signed in the Plea Agreement**

3    As an initial matter, defendant largely evades the principle

4    question of whether his breach of the Plea Agreement was knowing. See

5    generally, Mot. at 10-11. Defendant has offered no direct evidence of

6    his state of mind or identified any specific provisions of the plea

7    agreement that he claims he did not comprehend. Instead, defendant

8    largely attacks the Plea Agreement and included waivers generally,

9    arguing that his "mental health and cognitive-educational deficits,

10   created a perfect storm in which he did not have the ability to

11   knowingly and intelligently waive his Rule 410 right." Opp. at 9.

12   Accordingly, to the extent the Court finds that defendant voluntarily

13   entered the Plea Agreement and included waivers, defendant has

14   offered no facts or evidence to dispute that his breach was "knowing"

15   under Paragraph 22 of the same.

16   Not only has defendant failed to offer any evidence to suggest

17   that he did not fully comprehend or appreciate the plea agreement,

18   defendant and his counsel certified in writing that defendant had

19   reviewed the terms of the Plea Agreement, that he understood those

20   terms, and that he was freely entering into an agreement to plead

21   guilty, and that no one had "threatened or forced [defendant] in any

22   way to enter into [the Plea Agreement]." See ECF No. 6, at 19-20. In

23   his Opposition, defendant does not dispute that he signed the Plea

24   Agreement or the accompanying certifications. Nor does he dispute

25   that that Plea Agreement and certifications were accurately

26   translated for him. And most notably, defendant does not offer any

27   declaration of his own contradicting these certifications – or any

28

1   declaration at all.[3]

2          Instead of offering a declaration from defendant, or any direct

3   evidence of defendant's state of mind at the time he signed the plea

4   agreement, defendant's Opposition includes statements from other

5   persons offering their opinions that defendant might not have entered

6   the Plea Agreement voluntarily. For example, defendant offers a

7   declaration from his manager, Anthony Fernandez, stating that he

8   "literally pictured Puig being arrested in the middle of a game in

9   Korea and hauled off to jail to be extradited to the United States if

10  he did not make a deal with the government." See ECF No. 128-5, at

11  ¶ 5. But defendant's manager is not the defendant and cannot testify

12  to defendant's mental state – and notably, Mr. Fernandez says nothing

13  about any conversations he may have had with defendant on this point,

14  only his own subjective impression, and Mr. Fernandez does not (and

15  cannot) state that he was present for all conversations between the

16

17  _____

18          [3] Defendant's decision not to offer any testimony of his own
    appears calculated to avoid cross-examination on the assertions
19  offered by others in his place. For example, in the Opposition,
    defendant argues that he "is highly distractible and has difficulty
20  paying attention and following complex verbal directions or
    discussions." Opp. at 12. However, at least two of defendant's former
21  hitting coaches have expressed that they had no difficulty
    communicating with or instructing defendant. See Decl. of AUSA Dan
    Boyle, Exs. A, B.

22          As another example, defendant asserts that he had insufficient
    time to consider the proposed plea agreement because he only had
23  "initially one week (June 16-June 23), a period in which he had a
    travel day and a double-header" to consider it. See Opp. at 4, n.1.
24  However, the same publicly available Korean Baseball League database
    cited by defendant (MyKBOstats.com) shows that defendant was only on
25  the game roster for a single game during this period (June 16, 2022),
    and did not actually play that day. See Decl. of AUSA Dan Boyle, Ex.
26  C. For each other game during this period (including the mentioned
    double-header), these records indicate that defendant did not play at
27  all. According to defendant's own cited source, the first game
    he appeared for after June 16, 2022 was on July 7, 2022 – roughly the
28  same day he signed the Plea Agreement. See Boyle Decl. ¶ 4.

1  government and defense counsel where the Plea Agreement was
2  discussed.[4]

3      Similarly, the Opposition attaches a declaration from Dr. Paola
4  Suarez, stating that, based on her examination, defendant "suffers
5  from PTSD, ADHD, and executive function deficits, and has a limited
6  educational background." Opp. at 12. Dr. Suarez, however, does not
7  opine that defendant did not understand the plea agreement or that
8  his signature was not voluntary. Dr. Suarez merely diagnoses
9  defendant and opines that people with his condition are easily
10 distracted and may have difficulty following conversations. Further,
11 Dr. Suarez's declaration, and the Opposition as a whole, fail to
12 identify any specific provisions of the Plea Agreement that defendant
13 did not comprehend. Whatever the strength of Dr. Suarez' diagnosis,
14 however, her opinion of how defendant might have reacted is no
15 substitute for defendant's own testimony – particularly where
16 defendant already signed certifications to the contrary.

17     Defendant also argues that the Plea Agreement presented him a
18 "Hobson's choice" between accepting a plea or potentially losing his
19 lucrative contract playing professional baseball in South Korea.[5] See
20 Opp. at 12-13. But difficult choices are virtually always part of the

21 _____

22 [4] For example, while Mr. Fernandez might have initially feared
   defendant would be promptly extradited upon indictment, defense
23 counsel was certainly aware that even uncontested extraditions are
   lengthy processes, and any threat of a prompt arrest and extradition
24 would not be credible. See, e.g., Matter of Requested Extradition of
   Kirby, 106 F.3d 855, 863 (9th Cir. 1996), as amended (Feb. 27, 1997)
25 (discussing the "highly probable lengthy delays" as a result of
   "extradition proceedings themselves and the appeals therefrom," in
26 context of bail pending extradition). Furthermore, Mr. Fernandez was
   not present for later calls with the government during the plea
27 negotiation process.

28 [5] Notably, defendant never claims that he requested more time to
   consider the Plea Agreement, or that any such request was rejected.

plea process, and do not render a plea agreement involuntary. <u>See</u>
<u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978) ("[I]mposition of
these difficult choices is an inevitable—and permissible—attribute of
any legitimate system which tolerates and encourages the negotiation
of pleas." (quoting <u>Chaffin v. Stynchcombe</u>, 412 U.S. 17 (1973))).
This choice was not forced on defendant by the government – his
counsel requested to plea negotiations, and by agreeing to the plea,
defendant was successful in keeping this matter out of the public eye
long enough to finish his professional baseball season in South
Korea.[6] Indeed, it was only after he achieved his objective of
finishing the baseball season that defendant indicated that he might
not be willing to follow through with his agreement to plead guilty.

###   D.   Defendant Has Not Identified Any Purported "Exculpatory Evidence"

Defendant also argues that his plea could not have been
voluntary because he subsequently discovered what he contends to be
exculpatory evidence – which he does not detail.[7] <u>See</u> Opp. at 17.
Defendant cites to out-of-circuit precedent, <u>United States v.</u>

---

[6] Defendant argues that the government represented that it would
not wait until defendant's return to the United States to seek an
arrest warrant, but provides no citation or other proof of this
assertion – which the government disputes. Counsel does not offer any
declaration on this point (<u>see</u> <u>generally</u>, ECF No. 128-1), nor does
counsel attach any contemporaneous notes of these discussions which
might support this version of events.

[7] Defendant appears to allege that this allegedly exculpatory
evidence "demonstrates that Puig's waiver had not been knowing and
intelligent." Opp. at 2. Defendant, however, fails to advise the
government of what this alleged exculpatory evidence consists of, and
as such, the government cannot effectively respond. Defendant does
not have a right to proceed by ambush, and the Court should not
consider any such argument unless defendant details what this
purported evidence consists of and gives the government an
opportunity to respond.

1   <u>Newbert</u>, 504 F.3d 180 (1st Cir. 2007) in support of this argument,

2   but <u>Newbert</u> does not support him here. First, as defendant

3   recognizes, <u>Newbert</u> explicitly did not address a plea that had been

4   breached, <u>see</u> Opp. at 18 (describing <u>Newbert's</u> holding as "withdrawal

5   of a plea due to post-plea evidence of innocence does not constitute

6   a breach"), while here, the Court has already found defendant in

7   breach. The time for defendant to raise <u>Newbert</u> as a defense to

8   breach was before the Court found a breach of the Plea Agreement.[8] In

9   any event, as Judge Fischer found in <u>United States v. McTiernan</u>, in

10  circumstances similar to those here, <u>Newbert</u> is inapplicable. As

11  Judge Fischer explained:

12          In <u>United States v. Newbert</u>, 504 F.3d 180, 183 (1st Cir.
13          2007), for example, the district court found that
            defendant's plea was knowing, intelligent, and voluntary,
14          but that there was nevertheless a "fair and just reason" to
            allow him to withdraw it. There, the alleged breach was
15          based only on Defendant's request to withdraw, and the
            language of the plea agreement was narrow and somewhat
16          circular. The Court found that defendant's withdrawal did
            not breach the agreement. Here, the breach is also based on
17          Defendant's lack of truthfulness - a fact he apparently
            does not contest.
18

19  <u>McTiernan</u>, No. CR 06-259-DSF, 2010 WL 11667960, at *1 (C.D. Cal. July

20  7, 2010).[9] In sum, defendant has not explained what his purported

21  _____

22          [8] Defendant explicitly states that he found this undefined
    exculpatory evidence <u>*before*</u> he was scheduled to change his plea (<u>see</u>
23  Opp. at 18), so there is no reason why defendant failed to raise this
    argument before the Court found him in breach.

24          [9] As the <u>Newbert</u> court recognized, the right to withdraw a plea
25  while avoiding a breach is narrow and a defendant's burden is high; a
    defendant must show that he "could not, acting with due diligence,
26  have discovered the evidence before entering into the guilty plea,
    that the evidence establishes a plausible basis for concluding that
27  the defendant was not guilty of the crime to which he pleaded guilty,
    and that the evidence would have materially affected his decision as
28                                                          *(footnote cont'd on next page)*

exculpatory evidence consists of, or why he did not raise it when opposing the government's motion for a finding of breach, and even if he had, his cited out-of-circuit authority does not hold that exculpatory evidence renders a plea agreement involuntary.

**E.    Defendant's Evidentiary Objections Lack Merit**

Finally, defendant asserts numerous evidentiary objections to the admission of the Factual Basis, and while these some of these arguments may be addressed at trial, none merit denying the government's motion at this stage.

First, defendant objects that the Factual Basis should be excluded pursuant to Federal Rule of Evidence 403, because the Factual Basis would have little probative value. See Opp. at 19-23. Defendant is incorrect. Courts have routinely found that admission of a defendant's statements during the plea process enhances a trial's truth-seeking functions. See McTiernan, 2010 WL 11667960, at *2 ("Defendant's contention that the statements should be excluded as

---

to whether to plead guilty." Newbert, 504 F.3d at 187. The Court simply cannot make such a finding here, as defendant has not explained what his purportedly exculpatory evidence consists of, why his counsel could not have discovered it with ordinary diligence, or that this undefined evidence provides a plausible basis for believe him to be innocent.

Here, defendant's own recitation of the facts suggests that his counsel did not even begin investigating these facts until after defendant returned to the United States, months after he signed the Plea Agreement. See Opp. at 15 ("[U]pon Puig's return to the United States, and with direct access to Puig to help him focus on the details, to refresh his recollection with his own records, and to investigate the government's claims, the defense discovered exculpatory evidence."). At most, defendant suggests that he was simply too busy continuing his lucrative career "playing baseball approximately 6 days per week" (see Opp. at 4), but defendant does not explain why this investigation could not occur while defendant was working overseas (for example by defense counsel flying to South Korea) during the months the matter remained under seal.

1    more prejudicial than probative pursuant to Rule 403 of the Federal

2    Rules of Evidence has no merit. To the contrary, introduction of

3    Defendant's admission of guilt will 'enhance the truth-seeking

4    function of the trial.'" (quoting Mezzanatto, 513 U.S. 204)); United

5    States v. Mitchell, 633 F.3d 997, 1005 (10th Cir. 2011) ("Even if the

6    district court determines a guilty plea should be withdrawn, a waiver

7    of Rule 410 only means a trial will contain more evidence"); United

8    States v. Sylvester, 583 F.3d 285, 294 (5th Cir. 2009) ("[T]o ignore

9    relevant evidence of culpability simply because that evidence was

10   discovered during the course of plea negotiations would arguably

11   undermine the truth-seeking function of our criminal justice system.

12   While in theory an innocent defendant might execute such a waiver

13   (and thus inject false statements into the admissible record), the

14   benefit of evaluating as much relevant evidence as possible outweighs

15   the mere possibility of such danger, and will, on balance, enhance

16   the reliability of a fact-finder's conclusions.").[10]

17       Second, defendant suggests that allowing the government to use

18   the Factual Basis – even simply for impeachment – would lead to a

19   "trial-within-a-trial," because defendant "would not be precluded

20   from offering plea discussion evidence, which is highly probative

21   value of his mental state during such discussion." Opp. at 21-23. But

---

23       [10] Defendant cites to United States v. Sua, 307 F.3d 1150 (9th

24   Cir. 2002), but Sua dealt with a co-defendant's statements rather
     than those by the defendant himself, and in that case it was the

25   defendant seeking to admit his codefendant's plea agreement as a
     purported admission by the government. Id. at 1153. ("[A] district

26   court may properly exclude, under Fed. R. Evid. 403, a plea agreement
     offered for the purpose of establishing the government's belief in a

27   person's innocence."). Sua says nothing about the weight of a

28   defendant's own admission.

this is true for virtually any confession or statement made by a defendant and admitted at trial. Indeed, the Ninth Circuit's Model Jury Instruction 3.1 addresses this situation, stating that "[w]hen voluntariness of a confession is an issue, the instruction is required by 18 U.S.C. § 3501(a), providing that after a trial judge has determined a confession to be admissible, the judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." In other words, a defendant seeking to contextualize an alleged admission of guilt to law enforcement is hardly unique, and certainly not so confusing as to warrant preclusion under Rule 403. By defendant's logic, every confession would need to be excluded because introducing such a statement would naturally trigger a "trial within a trial" into the circumstances of the confession. Not so. If defendant wishes to open the door in front of the jury and explain that the Factual Basis was part of a since-breached agreement to plead guilty, then that is his choice to make. In any event, if the Factual Basis is admitted at trial, or used as impeachment, the Court is certainly capable of applying 18 U.S.C § 3501(a) and appropriately admitting or limiting evidence of voluntariness.

///

///

**III. CONCLUSION**

For the foregoing reasons, and those stated in the Motion, the government respectfully requests that this Court find that defendant's breach of the Plea Agreement constitutes a "knowing breach" under Paragraph 22 of the Plea Agreement and permit the introduction of the factual basis at trial.


Dated: July 12, 2023              Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  MACK E. JENKINS
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                   _/s/_____
                                  DAN G. BOYLE
                                  JEFF MITCHELL
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF DAN G. BOYLE

I, Dan G. Boyle, declare and state as follows:

1.    I am an Assistant United States Attorney at the United States Attorney's Office for the Central District of California assigned this matter.  I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2.    Attached as Exhibits A and B are true and correct redacted versions of memorandums of interview with two of defendant's previous baseball hitting coaches.

3.    Attached as Exhibit C is a of a true and correct version of a compilation of pages from the website MyKBOstats.com, for baseball games played by the Kiwoom Heroes between and including June 16, 2022 and June 24, 2022.

4.    According to MyKBOstats.com, defendant did not appear in any games for the Kiwoom Heroes between and including June 17, 2022 and July 6, 2023. See MyKBOstats.com, "Yasiel Puig, Kiwoom Heroes #66," available at https://mykbostats.com/players/2312.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on July 12, 2023.

_____
DAN G. BOYLE