1  BILAL A. ESSAYLI
   Acting United States Attorney
2  JOSEPH T. MCNALLY
   Assistant United States Attorney
3  Acting Chief, Criminal Division
   JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
4  MICHAEL J. MORSE (Cal. Bar No. 291763)
   LAURA A. ALEXANDER (Cal. Bar No. 313212)
5  Assistant United States Attorneys
   Public Corruption and Civil Rights Section
6       1100 United States Courthouse
        312 North Spring Street
7       Los Angeles, California 90012
        Telephone: (213) 894-0304/7367/1019
8       Facsimile: (213) 894-0141
        Email:    juan.rodriguez@usdoj.gov
9                 michael.morse@usdoj.gov
                  laura.alexander@usdoj.gov
10
   Attorneys for Plaintiff
11 UNITED STATES OF AMERICA

12              UNITED STATES DISTRICT COURT

13        FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,          No. 2:22-CR-394-DMG

15          Plaintiff,                GOVERNMENT'S MOTION *IN LIMINE* NO.
                                      3 TO PRECLUDE IMPROPER ARGUMENT
16          v.                        REGARDING THE GOVERNMENT'S
                                      INVESTIGATION AND CHARGING
17 YASIEL PUIG VALDES,                DECISION

18          Defendant.               Hearing Date: October 22, 2025
                                     Time:         11:00 a.m.
19                                   Location:     Courtroom of the
                                                   Hon. Dolly M. Gee
20

21       Plaintiff United States of America, by and through its counsel

22 of record, the Acting United States Attorney for the Central District

23 of California and Assistant United States Attorneys Juan M.

24 Rodriguez, Michael J. Morse, and Laura A. Alexander, hereby files its

25 motion in limine to preclude improper argument regarding the

26 government's investigation and charging decision.

27 ///

28 ///

1     This motion in limine is based upon the attached memorandum of

2   points and authorities, the files and records in this case, and such

3   further evidence and argument as the Court may permit.  Defendant

4   opposes this motion.

5   Dated: September 29, 2025          Respectfully submitted,

6                                      BILAL A. ESSAYLI
                                       Acting United States Attorney
7
                                       JOSEPH T. MCNALLY
8                                      Assistant United States Attorney
                                       Acting Chief, Criminal Division
9

10                                     */s/ Laura A. Alexander*
                                       JUAN M. RODRIGUEZ
11                                     MICHAEL J. MORSE
                                       LAURA A. ALEXANDER
12                                     Assistant United States Attorneys

13                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

In February 2023, approximately two months before Yasiel Puig Valdes ("defendant") was set to proceed to trial in April 2023, defendant filed a motion seeking discovery "to show that similarly situated individuals of a different race and cultural background than [defendant] were not prosecuted."  (Dkt. 59 at 1.)  Within that motion, defendant alleged that the investigative team's pattern in conducting interviews "was markedly different depending on whether the individual being interviewed was Black or not Black," and specifically alleged that defendant himself was interviewed, investigated, and charged because of and in a manner consistent with the investigative team's racial bias against him.  (<u>Id.</u>)  The Court ultimately denied this motion, finding that defendant failed to "come forward with some credible evidence of discriminatory intent and effect," and that there was simply "no evidence to suggest that [18 U.S.C. § 1001] admonitions [in interviews] were given in anything but a race-neutral manner."  (Dkt. 106 at 6-7.)

Notwithstanding the lack of any credible evidence to support his racial-prejudice theory, defendant did not miss the opportunity to hold a press conference outside of First Street Courthouse on February 11, 2023 (before the Court's ruling on his motion), wherein his attorneys claimed that "the government is biased against Puig" and that there is a "systematic problem that unfairly sends more people of color to prison with stiffer penalties than White people."[1] Given the highly prejudicial nature of defendant's baseless

---

[1] The press conference was reported on KCAL News. <u>See</u> https://www.youtube.com/watch?v=hJr9P_WXBlI.

allegations related to the investigative team's racial bias -- presented both to this Court and the public-at-large -- the government now seeks to exclude from trial all argument and testimony suggesting, in any way, that racial bias impacted the manner in which the government broadly investigated the illegal gambling operation led by Wayne Nix (the "Nix Gambling Business"), and the manner in which the government specifically investigated and/or charged defendant.[2] Such meritless arguments and/or lines of questioning would be lacking in foundation, irrelevant, and to the extent any probative value exists (it does not), such value would be substantially outweighed by the danger of unfair prejudice. Indeed, the only purpose of such argument and testimony would be to inflame the passions of the jury, and this Court should exercise its gatekeeping function to prevent any further attempts by defendant to taint the jury.

## II.   RELEVANT PROCEDURAL HISTORY[3]

On February 10, 2023, defendant filed a motion to compel discovery related to the government's alleged selective prosecution of him based on his race. (Dkt. 59.) Defendant specifically alleged that the government, throughout its investigation, "viewed Black men as untruthful and uncooperative," "berated and bullied" Black men (including defendant) in interviews, and refused to provide Black men

---

[2] The government attempted to meet-and-confer with defense counsel to determine whether defendant intended to make arguments or elicit testimony related to the government investigative team's alleged racial bias on cross-examination or in its case-in-chief. Defense counsel responded that they have not yet decided whether they will seek to offer such evidence at trial.

[3] The government hereby incorporates the factual background detailed in its Motion in Limine No. 1 to Admit Evidence Inextricably Intertwined with the Charged Conduct, or in the Alternative, Admit Evidence Under Federal Rule of Evidence 404(b), filed at Dkt. 205.

1  (including defendant) with sufficient time and information to refresh

2  their recollections, as the government did with non-Black men.  (Id.

3  at 1, 7.)  None of defendant's allegations, however, were supported

4  by any evidence; to the contrary, evidence submitted by the

5  government in support of its opposition to defendant's motion --

6  declarations, interview reports, and audio recordings -- demonstrated

7  that the investigative team conducted its investigation of the Nix

8  Gambling Business in an ethical and race-neutral manner.  (See Dkt.

9  73-1 through 73-12).

10      Indeed, the evidence showed that the government conducted six

11  target interviews and 27 non-target interviews in 2020 and 2021.

12  (Dkt. 106 at 2-3.)  The admonishments provided by the government to

13  target and non-target individuals in these interviews did not evince

14  racially disparate treatment of Black people.  The six targets, none

15  of whom are Black, have each entered guilty pleas to crimes other

16  than making false statements or obstruction of justice.  (Id. at 2.)

17  According to former government counsel, AUSA Jeff Mitchell, most

18  targets retained attorneys and were provided with proffer letters,

19  which AUSA Mitchell reviewed with the targets.  (Dkt. 73-1 at ¶¶ 4-

20  5.)  For each target proffer, AUSA Mitchell's standard practice was

21  to discuss "the paragraph [] advis[ing] the target that [s/he could]

22  be prosecuted for providing false statements."  (Id. ¶ 5.)

23      The 27 non-target interviews proceeded in one of the following

24  ways: (1) AUSA Mitchell advised the interviewee against making false

25  statements and/or referenced or read the text of 18 U.S.C. § 1001;

26  (2) a federal agent advised the interviewee in the same way; (3) the

27  government provided the interviewee with Use Immunity, which contains

28  a warning against giving false statements; or (4) no admonishment was

provided at all, because the interview was conducted by a field office.  (Dkt. 106 at 2-3.)  In defendant's interview, AUSA Mitchell advised the defendant against making false statements and read the text of § 1001 to defendant.  (Dkt. 68 at 13; Dkt. 77 at 68.)  In advising defendant this way, AUSA Mitchell advised defendant as just he advised non-Black interviewees, _e.g._, Individual 6.  (Id.)  As with many of the other interviews, AUSA Mitchell also provided defendant with numerous opportunities to confer with his counsel, and one specific opportunity, towards the end of the interview, to recant his false statements.  (Dkt. 73-1 at ¶¶ 21-22.)  Defendant, however, declined these opportunities and persisted in his lies.  (Id. ¶ 22.)

This Court ultimately denied defendant's motion, finding that defendant failed to "come forward with some credible evidence of discriminatory intent and effect," and that there was simply "no evidence to suggest that the [18 U.S.C. § 1001] admonitions [provided to defendant and others involved in the Nix Gambling Business] were given in anything but a race-neutral manner."  (Dkt. 106 at 6-7.)

**III. ARGUMENT**

Trial courts "have a duty to forestall or prevent" jury nullification, including by preventing "impermissible" defense questioning or argument.  United States v. Lynch, 903 F.3d 1061, 1079-80 (9th Cir. 2018) (citation omitted).  Any arguments and questioning relating to defendant's race, defendant's co-conspirators' races, and the investigative team's alleged racial bias in prosecuting defendant and others involved in the Nix Gambling Business, or similar issues, are baseless, irrelevant, and unfairly prejudicial, and the Court should exclude them.

**A.    Any Arguments or Testimony Related to the Investigative
Team's Alleged Racial Bias Should Be Excluded as Baseless,
Irrelevant and Unfairly Prejudicial**

At the outset, any suggestion by defendant -- through jury
addresses, cross-examination questioning, or his affirmative case, if
he presents one -- that the government investigated and charged him
because he is Black should be excluded as a meritless attempt to
inflame the sensitivities of the jury.  The issue of whether the
investigative team's prosecution of defendant was racially motivated
was extensively briefed for defendant's motion to compel production
of selective prosecution, and defendant could not articulate -- in
either his motion, reply, or supplemental briefing (see Dkts. 59, 61,
80, 81, and 99) – any credible evidence to substantiate this theory.
Again, AUSA Mitchell advised defendant against making false
statements in his January 27, 2022 interview, and read him the text
of § 1001.  He further provided defendant with several opportunities
to communicate privately with his attorneys and clarify his
statements.  As the government demonstrated through evidence
submitted in support of its opposition to defendant's motion, AUSA
Mitchell's admonitions and treatment of defendant in his interview
were consistent with his treatment of non-Black individuals
interviewed throughout the course of the government's Nix Gambling
Business investigation.  This Court should accordingly prevent
defendant from making any suggestion at trial that the investigative
team was impacted by implicit or explicit racial prejudice; this is
simply not true, not anchored to any admissible evidence, lacking in
foundation, and highly prejudicial.

Further, because "irrelevant evidence is not admissible," the
only evidence admissible at trial is that which relates to elements

1  of the charged crimes.  To prove defendant's guilt, the government

2  must prove the elements of making false statements, in violation of

3  18 U.S.C. § 1001(a)(2), and obstructing justice, in violation of

4  1503(a).  The only evidence admissible at trial is evidence that

5  relates to those elements and has a "tendency to make a fact more or

6  less probable."  Fed. R. Evid. 401.

7       Arguments and questioning related to the agents' subjective

8  motivations in investigating this case should be excluded as

9  irrelevant and prejudicial.  Indeed, agents' "subjective motivations

10 are irrelevant" even when assessing whether evidence should be

11 suppressed.  United States v. Taylor, 60 F.4th 1233, 1240 (9th Cir.

12 2023).  That principle applies with equal, if not greater, force at

13 trial.  And whatever defendant's opinion on the propriety or fairness

14 of the investigation leading to his charges, the Court has resolved

15 that issue by denying defendant's motion to compel discovery of

16 selective prosecution.

17      In addition, the Court may "exclude relevant evidence" if

18 whatever probative value is outweighed by a "danger" of "unfair

19 prejudice, confusing the issues, misleading the jury, undue delay,"

20 or "wasting time."  Fed. R. Evid. 403.  Courts have widely

21 recognized that accusations of racism -- when not directly related

22 to, for example, a defendant's motive or mental state -- are

23 "potentially inflammatory."  United States v. Tyrell, 840 F. App'x

24 617, 623 (2d Cir. 2021).  The Tyrell defendant sought to introduce

25 "racist tweets" from a police offer who maintained a twitter account,

26 "ObamaHater55."  Even though "numerous tweets revealed explicit

27 racial prejudice," the Second Circuit affirmed exclusion because the

28

6

1    officer's prejudice was not relevant to his testimony, which related

2    only to facts corroborated by other evidence.  <u>Id.</u>

3      The same analysis favors excluding any arguments about the

4    investigative team's alleged racial prejudice here.  To be clear, the

5    investigative team proceeded with the investigation of the Nix

6    Gambling Business in a race-neutral manner.  In his interview,

7    defendant received a § 1001 admonition like many other non-Black

8    interviewees.  He was also provided with the opportunity to clarify

9    his statements, like many other non-Black interviewees, but remained

10    steadfast in his lies.  Defendant's race was, and is, not at issue.

11    The challenge to the propriety of the government's investigation with

12    respect to the government's alleged racial prejudice was properly

13    attempted through defendant's motion to compel production of

14    selective prosecution -- which the Court has rejected.  Any further

15    argument directed toward the jury is not relevant to any of the

16    elements of charges under 18 U.S.C. §§ 1001(a)(2) or 1503(a).

17      That conclusion is consistent with decisions from courts across

18    the country, which have excluded irrelevant racial arguments designed

19    only to inflame the jury and stir emotions.  <u>See, e.g.</u>, <u>Yowan Yang v.</u>

20    <u>ActioNet, Inc.</u>, No. 14-cv-792-AB (C.D. Cal. Feb. 19, 2016) (excluded

21    "race-based comments"); <u>Clark v. Martinez</u>, 295 F.3d 809, 814 (8th

22    Cir. 2002) (rejecting evidence of racial motivation because "hostile

23    motive is not an element" of the relevant charges).  This Court

24    should follow suit and exclude arguments and questioning related to

25    the investigative team's alleged implicit and explicit racial biases

26    under Rules 401 and 403.

27

28

**B.    Arguments and Questioning Suggesting that the Investigative Team Prosecuted Defendant Because He Is Black Would Serve Only an Improper Purpose: Nullification**

The only purpose for arguments and questioning related to the investigative team's alleged racial prejudice then is to attempt to "back door" a jury nullification defense.  See Powell, 955 F.2d at 1213 (holding that the defendant had no right to instruct the jury to nullify itself); see also United States v. Navarro-Vargas, 408 F.3d 1184, 1198 (9th Cir. 2005) (noting that courts have "uniformly rejected" requests for jury nullification instructions) (citing cases).  Because this is a jury trial on defendant's guilt, not a trial to relitigate defendant's motion to compel production of selective prosecution, this Court should preclude defendant from encouraging the jury to nullify through his baseless racial-prejudice theory.  And defendant should not be permitted to argue a legal issue -- much less one where he could not even meet his burden to obtain discovery to support any motion to dismiss the indictment -- to the jury.  See, e.g., United States v. Poschwatta, 829 F.2d 1477, 1483 (9th Cir. 1987) ("The court acts as the jury's sole source of the law."); United States v. Mayer, 503 F.3d 740, 747 (9th Cir. 2007) ("[A]n indictment that results from selective prosecution will be dismissed" for violating the Due Process Clause of the Fifth Amendment).  These jury nullification arguments must be excluded.

**C.    Improper Argument Regarding the Government's Charging Decision and Defendant's Co-Conspirators**

The Supreme Court has recognized that "[i]n our criminal justice system, the [g]overnment retains 'broad discretion' as to whom to prosecute."  Wayte v. United States, 470 U.S. 598, 607 (1985).  Indeed, charging decisions, which are "rarely simple," implicate

8

1  complex considerations including the strength and importance of a

2  case, the prosecution's general deterrence value, the government's

3  enforcement priorities, and the allocation of resources.  See Town of

4  Newton v. Rumery, 480 U.S. 386, 396 (1987).  Given the broad

5  discretion traditionally afforded to prosecutors, courts have

6  consistently held that evidence or argument about charging decisions

7  should not be admitted at trial.  See United States v. Re, 401 F.3d

8  828, 832 (7th Cir. 2005); United States v. Boyle, No. S1 08 CR 523

9  (CM), 2009 WL 5178525, at *3 (S.D.N.Y. 2009) ("While a defendant is

10  entitled to cross-examine government witnesses as to inconsistent

11  statements, the government's charging decisions are not proper

12  subjects for cross-examination and argument.").

13      Inquiries into charging decisions generally do not tend to make

14  facts of consequence more or less probable, and thus are irrelevant.

15  See Fed. R. Evid. 401.  Put another way, such inquiries lack any

16  probative value as to defendant's guilt or innocence.  Because

17  inquiries into the government's charging decisions and enforcement

18  practices are irrelevant to whether the government has proven that

19  defendant committed the charged crimes beyond a reasonable doubt,

20  they should be excluded on that basis alone.

21      For the same reasons, defendant should not be permitted to refer

22  to the absence of "more culpable" co-conspirators from either the

23  government's case at large or defendant's trial in particular.  See

24  United States v. Hearns, CR 15-474-PSG, Dkt. 812 (C.D. Cal. Oct. 20,

25  2021) (granting government's request to exclude evidence and

26  arguments related to profits earned in the scheme by absent co-

27  defendants because such evidence would mislead the jury into

28  "sympathizing with one or more [d]efendants based on their relative

financial gain from the scheme"). Although defendant was not charged
with conspiring to operate an illegal gambling business, his charges
-- false statements and obstruction of justice -- are rooted in his
lies to disguise his involvement in that conspiracy, and evidence
presented at trial will demonstrate as much. Thus, any arguments
related to "more culpable" co-conspirators of the Nix Gambling
Business absent from trial would be misleading, especially given
defendant's counsel's statements, in defendant's First Street
Courthouse press conference, that "Yasiel has gotten more of a press
statement and release from this Office than the people who were
committing the heinous crimes[.]" And to the degree defendant
attempts to allege that other co-conspirators that were not charged
federally are more culpable, that, too, is improper.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests
that this Court grant its motion in limine to exclude improper
evidence related to the government's investigation and charging
decision in this case.

Dated: September 29, 2025        Respectfully submitted,

                                 BILAL A. ESSAYLI
                                 Acting United States Attorney

                                 JOSEPH T. MCNALLY
                                 Assistant United States Attorney
                                 Acting Chief, Criminal Division

                                 */s/ Laura A. Alexander*
                                 JUAN M. RODRIGUEZ
                                 MICHAEL J. MORSE
                                 LAURA A. ALEXANDER
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

10