BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
MICHAEL J. MORSE (Cal. Bar No. 291763)
LAURA A. ALEXANDER (Cal. Bar No. 313212)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0304/7367/1019
    Facsimile: (213) 894-0141
    Email:    juan.rodriguez@usdoj.gov
           michael.morse@usdoj.gov
           laura.alexander@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-00394-DMG |
|---|---|
| Plaintiff, | *EX PARTE* APPLICATION FOR AN ORDER COMPELLING DEFENDANT TO SUBMIT TO AN INDEPENDENT MENTAL EXAMINATION AND PRODUCE DEFENSE EXPERT DISCOVERY; DECLARATION OF JUAN M. RODRIGUEZ; EXHIBITS 1-6 |
| v. | |
| YASIEL PUIG VALDES, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Juan M. Rodriguez, Michael J. Morse, and Laura A. Alexander, hereby moves <u>ex parte</u> for an order compelling defendant to submit to an independent mental examination and produce defense expert discovery.

    This Application is based upon the attached memorandum of points and authorities, the declaration of Juan M. Rodriguez, the files and

records in this case, and such further evidence and argument as the Court may permit.


 Dated: October 9, 2025              Respectfully submitted,

                                     BILAL A. ESSAYLI
                                     Acting United States Attorney

                                     JOSEPH T. MCNALLY
                                     Assistant United States Attorney
                                     Acting Chief, Criminal Division

                                     */s/ Juan M. Rodriguez*
                                     JUAN M. RODRIGUEZ
                                     LAURA A. ALEXANDER
                                     MICHAEL J. MORSE
                                     Assistant United States Attorneys

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   DEFENDANT'S MENS REA WILL BE THE CENTRAL ISSUE AT TRIAL........3

III.  ARGUMENT.......................................................6

      A.    This Court Should Compel an Independent Examination of
            Defendant................................................7

      B.    Fundamental Fairness Dictates that the Government be
            Permitted to Challenge Defendant's Expert.................9

      C.    A Defense "Observer" Should Not Be Present During
            Defendant's Interview Because it Would Seriously
            Disrupt and Undermine the Integrity of the Examination...10

      D.    The Court Should Order Defendant to Produce Defense
            Expert Discovery.........................................16

      E.    Defendant Is Also Required to Provide Rule 16
            Disclosures Related To Any Expert Defendant Intends to
            Call in His Case-in-Chief................................19

      F.    If Defendant Fails to Submit to an Examination or
            Produce Expert-Related Discovery, the Court Should
            Preclude Defendant's Mental Condition Expert from
            Testifying...............................................24

IV.   CONCLUSION....................................................24

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                          PAGE

**Federal Cases**

Ake v. Oklahoma,
    470 U.S. 68 (1985) ............................................. 6, 9

Estelle v. Smith,
    451 U.S. 454 (1981) ...................................... 11, 14, 15

United States v. Byers,
    740 F.2d 1104 (D.C. Cir. 1984) .............................. passim

United States v. Garcia,
    739 F.2d 442 (9th Cir. 1984) .................................... 13

United States v. Halbert,
    712 F.2d 388 (9th Cir. 1983) ................................. 8, 11

United States v. Handy,
    454 F.2d 885 (9th Cir. 1971) .................................... 11

United States v. Jackson,
    51 F.3d 646 (7th Cir. 1995) ..................................... 17

United States v. Larkin,
    2015 WL 3555295 (D. Nev. June 5, 2015) ......................... 20

United States v. Lewis,
    53 F.3d 29 (4th Cir. 1995) ...................................... 8

United States v. McSherry,
    226 F.3d 153 (2d Cir. 2000) .................................. 8, 10

United States v. Ornelas,
    906 F.3d 1138 (9th Cir. 2018) ................................... 23

United States v. Phelps,
    955 F.2d 1258 (9th Cir. 1992) ................................... 9

United States v. Polouizzi,
    No. 06-CR-22 (JBW), 2007 WL 1040923 (E.D.N.Y. Apr. 4, 2007) ....... 8

United States v. Thompson,
    No. CR19-159-RSL, 2022 WL 834024 (W.D. Wash. Mar. 21, 2022) ....... 5

United States v. W.R. Grace,
    526 F.3d 499 (9th Cir. 2008) ................................... 23

1

<strong><u>TABLE OF AUTHORITIES (CONTINUED)</u></strong>

2

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

3

<u>United States v. White</u>,
   21 F. Supp. 2d 1197 (E.D. Cal. 1998) ........................ 6, 8, 9

4

5

<u>United States v. Williams</u>,
   2010 WL 11805539 (D. Haw. Sept. 24, 2010) ....................... 21

6

**Federal Rules**

7

Fed. R. Crim. P. 12.2(b) ................................... 7, 20, 21

8

Fed. R. Crim. P. 12.2(c) ....................................... passim
Fed. R. Crim. P. 12.2(d)(1) ...................................... 13

9

Fed. R. Crim. P. 16 .......................................... 17, 21
Fed. R. Crim. P. 16(a)(1)(G) ..................................... 21

10

Fed. R. Crim. P. 16(b)(1)(C) ................................. 16, 19
Fed. R. Crim. P. 57(b) ........................................... 21

11

Fed. R. Evid. 705 ............................................ 17, 18

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     INTRODUCTION

3      On September 29, 2025, defendant Yasiel Puig
4 Valdez

("defendant") served notice of his intent to introduce expert

5 evidence of a mental condition at his upcoming trial.[1]  (Dkt. 215.)

6 According to defendant, "[t]he expert testimony will be provided by a

7 licensed and certified neuropsychologist who administered various

8 tests on [defendant], including cognitive, academic achievement, and

9 questionnaires examining psychological functioning (i.e.,

10 psychodiagnostics)."  (Id.)  To meet this evidence at trial, the

11 government has retained its own expert to evaluate defendant and his

12 purported mental condition.  (Rodriguez Decl. ¶ 3.)

13      Through meet-and-confer efforts, the parties have agreed that

14 the government's expert may conduct a mental evaluation of defendant

15 on October 23, 2025.  (Rodriguez Decl. ¶ 4.)  Specifically, despite

16 the government's expert's request for a two-day evaluation with no

17 limitations on his evaluation techniques, including his interview

18 questions, the government yielded to defendant's request for a one-

19 day evaluation limited in scope to the evaluation conducted by

20 defendant's expert, i.e., without reference to defendant's January

21 2022 interview.[2]  (Id.)  The government further agreed, at

22 defendant's request and contrary to the expressed preference of its

23

24      [1] Trial is currently set to proceed on November 4, 2025.  (Dkt.
25 200.)  However, the parties have agreed to stipulate to a continuance
of the trial date to January 20, 2026, and intend to file a
26 stipulation to this effect soon.  (Declaration of Juan M. Rodriguez
("Rodriguez Decl.") ¶ 2.)

27      [2] The government strictly conditioned this agreement on
28 defendant's agreement to not offer testimony regarding any of his
statements related to the alleged offenses through the defense mental
condition expert.

1  own expert, to videorecord (instead of only audio recording) the
2  interview portion of its expert's evaluation of defendant.  The
3  government will make this recording available to defendant.  (Id.)

4      The parties are now at an impasse with respect to the following
5  remaining issues related to their mental condition experts:
6  (1) defendant's request for a defense "observer" to be present during
7  the interview portion of the government's expert's evaluation;
8  (2) the government's request for defendant's expert's raw testing
9  data; and (3) the government's request for any and all discovery
10 wherein defendant's expert memorialized her evaluation of defendant,
11 including, not but limited to: reports, notes, summaries, or
12 recordings.

13     According to defense counsel, a defense "observer" is required
14 to protect defendant's Fifth and Sixth Amendment rights, and
15 defendant has no obligation to produce testing data or related expert
16 discovery.  (Id. ¶ 5.)  However, the presence of a third party during
17 a mental evaluation is simply not in line with industry standards,
18 would impact the integrity of the evaluation, and any concerns
19 regarding the propriety of the government's expert's evaluation can
20 be easily ameliorated by the government's agreement to videorecord
21 the evaluation.  Further, the government's expert cannot properly
22 evaluate the defense expert's opinions, or mirror the scope of her
23 evaluation (as defense counsel requested), without reviewing
24 discovery related to her evaluation, as well as her underlying
25 testing data.  (Rodriguez Decl. ¶ 6.)  Indeed, the government's
26 expert relayed that he needs to review the defense expert's testing
27 data and any related scoring sheets to determine whether he agrees or
28 disagrees with her interpretation of the test results.  (Id.)

Given the parties' disagreements with respect to these issues, and the approaching October 23, 2025 evaluation date, the government hereby moves ex parte, pursuant to Federal Rules of Criminal Procedure ("FRCP") 12.2(c)(1)(B) and 16(b)(1)(C) and Federal Rule of Evidence ("FRE") 705, for an order stating that the government's expert may proceed with his evaluation without a defense "observer," and to compel defense discovery in advance of the evaluation by no later than October 16, 2025.  Because the government's expert requires one week to review materials in advance of the October 23, 2025 evaluation, the government respectfully requests that the Court rule on this Application by October 15, 2025.

## II.  DEFENDANT'S MENS REA WILL BE THE CENTRAL ISSUE AT TRIAL[3]

Because there is no serious dispute that defendant provided false statements, and omitted material information, during his January 2022 interview with law enforcement, the government anticipates that the central issue at trial will be whether defendant possessed the requisite mental state to be found guilty of the alleged offenses beyond a reasonable doubt.  To that end, although the government has not yet received Rule 16 disclosures related to defendant's expert, it anticipates that defendant's expert will opine that defendant's Attention-Deficit/Hyperactivity ("ADHD") and Post-Traumatic Stress Disorder ("PTSD") diagnoses impacted his ability to understand questions presented to him during the January 2022 interview.  (See Dkt. 132.)

---

[3] The government incorporates by reference the statement of relevant facts in the government's Motion in Limine to Admit Evidence Inextricably Intertwined with Charged Conduct, or in the Alternative, Admit Evidence Under Federal Rule of Evidence 404(b).  (Dkt. 205).

3

Accordingly, the government respectfully moves this Court for an order, under FRCP 12.2(c)(1)(B), to require defendant to submit to an independent mental examination by the government's expert, that no representative of the defense team be present[4], and that the government's expert not be restricted in his methodology, _i.e._, the materials that he ordinarily reviews in advance of mental evaluations.  This Court has authority under the plain language of FRCP 12.2(c)(1)(B) to order such an examination.  The Court should exercise its discretion and grant the government's Application because an independent examination is the only way for the government to evaluate the validity of defendant's claims and present rebuttal expert testimony at trial.  The Ninth Circuit and other courts across the country have consistently held that once a defendant puts his mental condition at issue based on an examination conducted by his own expert, fundamental fairness requires that the government be permitted access to the defendant to conduct its own independent forensic evaluation in a manner consistent with the government expert's best judgment.  See _infra_, Section III.B.  Accordingly, the government respectfully requests that the Court permit the government's expert to examine defendant according to the procedures enumerated in the separately-filed proposed order.

Second, the government also respectfully requests that this Court compel defendant to turn over the following five categories of information (hereinafter "Defense Expert Discovery")[5]:

---

[4] No government representative will be in attendance.

[5] Defense counsel has represented that defendant will produce Rule 16 disclosures related to his mental condition expert on October 16, 2025.  (Rodriguez Decl. ¶ 8.)  However, defense counsel has represented that they do not believe these disclosures include any

*(footnote cont'd on next page)*

4

1.     Any and all notes, summaries, reports or recordings regarding defendant prepared by defendant's expert or any other person working on their behalf;

2.     Copies of any and all tests given to or administered on defendant by defendant's expert or any other person working on their behalf;

3.     Copies of defendant's test results, including all raw data and scoring sheets;

4.     A list of all the government's discovery materials that defendant's attorneys, or anyone acting on their behalf, furnished to defendant's expert in connection with the expert's evaluation of defendant; and

5.     Copies of any and all materials other than those described above in paragraph (4), including records, information, and/or reports in any form (e.g., medical records) that defendant, defendant's attorneys, or anyone acting on behalf of defendant or defendant's attorneys, furnished to the expert, or that the expert or anyone acting on behalf of the expert obtained, in connection with the expert's evaluation of defendant.

Without the above-referenced materials, the government's expert cannot mirror the contours of the defense expert's examination -- as defendant himself requested -- to evaluate and rebut her opinions.[6] The government is entitled to know, for example, whether defendant's expert reviewed and relied upon a selective portion of the case discovery produced by the government to defendant, or a selective portion of defendant's background material (e.g., Major League Baseball records related to defendant's request for a Therapeutic Use Exception on the basis of his ADHD and PTSD diagnoses).  It is axiomatic that an expert who relies on cherry-picked information may reach an incomplete or unreliable conclusion.  The government is

---

expert report (as their expert did not produce a report), or the production of its expert's testing data.  (Id.)

[6] Indeed, in United States v. Thompson, No. CR19-159-RSL, 2022 WL 834024, at *1 (W.D. Wash. Mar. 21, 2022), the defense turned over their expert's report.

1  entitled to know if that happened here, since at a minimum, this

2  would be fertile ground for cross-examination, and critical to the

3  jury's weighing of competing expert opinions.  For these reasons, and

4  for the reasons discussed in more detail below, the discovery rules

5  permit the government to receive Defense Expert Discovery in advance

6  of trial, instead of learning of this information for the first time

7  during cross-examination.  Accordingly, this Court should also grant

8  the government's request for Defense Expert Discovery.

9  **III.  ARGUMENT**

10      The Court has authority to order the requested independent

11  examination under FRCP 12.2(c)(1)(B).  FRCP 12.2(c) was amended in

12  2002 to make explicit that a court "may" order an independent mental

13  examination of a defendant when he interposes at trial a mental

14  condition, other than insanity, that bears on his guilt.  Moreover,

15  even before FRCP 12.2(c) was clarified to make explicit that a

16  district court has this authority, district courts in this Circuit

17  routinely exercised their authority to order an examination under

18  circumstances similar to those present here.  See, e.g., United

19  States v. White, 21 F. Supp. 2d 1197, 1198 (E.D. Cal. 1998) (ordering

20  examination under court's supervisory authority).

21      Indeed, good cause exists for the Court to exercise its

22  authority here.  An independent examination is the only way for the

23  government to test the validity of defendant's mental condition

24  claims.  The Supreme Court has explained that "psychiatrists disagree

25  widely and frequently on what constitutes mental illness" and that a

26  jury "make[s] its most accurate determination of the truth on the

27  issue before them" when "psychiatrists for each party" present their

28  evaluation of a defendant's condition.  Ake v. Oklahoma, 470 U.S. 68,

81 (1985).  An independent examination by the government will permit it to fairly evaluate defendant's claims and present the jury with counterbalancing testimony on the central issue at trial.

The Court should also order defendant to produce Defense Expert Discovery.  FRE 16 and FRE 705 require production of these materials once defendant has put his mental condition at issue.

### A.    This Court Should Compel an Independent Examination of Defendant

FRCP 12.2(b) governs when a defendant intends to introduce expert evidence of a mental disease or defect not amounting to an insanity defense.  In pertinent part, FRCP 12.2(b) provides:

> If a defendant intends to introduce expert evidence related to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt . . . the defendant must – within the time provided for filing a pretrial motion or any later time the court sets -- notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk.

Fed. R. Crim. P. 12.2(b) (emphases added).  Although a court "must" permit the government to examine a defendant asserting an insanity defense, it "may" permit the government to examine a defendant who provides notice under FRCP 12.2(b), as defendant has done here (Dkt. 215).  FRCP 12.2(c)(1)(B) (providing that if a "defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court.")

The Court's authority to order an independent examination under FRCP 12.2(c) when a defendant raises a mental defect claim not amounting to an insanity defense was made explicit in 2002:

> [One of the 2002 amendments] clarifies that the authority of

7

1
2
3
4

> a court to order a mental examination under Rule
> 12.2(c)(1)(B) extends to those cases when the defendant has
> provided notice, under Rule 12.2(b), of an intent to present
> expert testimony on the defendant's mental condition, either
> on the merits or at capital sentencing.

See id. Advisory Committee Notes. Relying on the amended rule,

courts across the country have permitted the government to

independently examine a defendant who intends to raise a mental

condition claim at trial. See, e.g., United States v. Polouizzi, No.

06-CR-22 (JBW), 2007 WL 1040923, at *1 (E.D.N.Y. Apr. 4, 2007).

Moreover, even before courts had explicit authority under FRCP

12.2(c) to order an examination for a mental defect claim, most

courts had held that such an examination was warranted under the

circumstances present here, either based on implicit authority under

former FRCP 12.2(c) or under a court's supervisory or inherent

authority. E.g., United States v. Halbert, 712 F.2d 388, 389-90 (9th

Cir. 1983) (affirming district court's order for independent mental

examination under former FRCP 12.2(c) when the defendant raised a

diminished capacity defense); United States v. McSherry, 226 F.3d

153, 155 (2d Cir. 2000) ("Guided by considerations of justice, and in

the exercise of supervisory powers, federal courts may, within

limits, formulate procedural rules not specifically required by the

Constitution or the Congress.") (internal quotations omitted); United

States v. Lewis, 53 F.3d 29, 35 n. 9 (4th Cir. 1995) (upholding

mental health examination ordered under FRCP 12.2(c) pursuant to

notice provided under FRCP 12.2(b)); see also White, 21 F. Supp. 2d

at 1198 (ordering examination under court's supervisory authority).

At bottom, this Court has the authority to order a mental examination

8

of defendant and, as further discussed below, courts consistently

have exercised their authority in the interest of fairness.

**B.    Fundamental Fairness Dictates that the Government be Permitted to Challenge Defendant's Expert**

Courts have permitted the government to independently examine a

defendant raising a mental defect claim for good reason.  "Questions

of mental illness . . . turn on the meaning of the facts which must

be interpreted by expert psychiatrists and psychologists."  United

States v. Phelps, 955 F.2d 1258, 1265 (9th Cir. 1992) (internal

quotations omitted).  "Psychiatry is not, however, an exact science,

and psychiatrists disagree widely and frequently on what constitutes

mental illness, on the appropriate diagnosis to be attached to given

behavior and symptoms, [and] on cure and treatment."  Ake, 470 U.S.

68, 81 (1985).  For this reason, "ordinarily the only effective

rebuttal of psychiatric opinion testimony is contradictory opinion

testimony."  White, 21 F. Supp. 2d at 1199 (quoting United States v.

Byers, 740 F.2d 1104, 1114 (D.C. Cir. 1984)).  Indeed, the jury will

be better able to perform its truth-finding function by also

considering expert testimony from a government expert:

> By organizing a defendant's mental history, examination
> results and behavior, and other information, interpreting it
> in light of their expertise, and then laying out their
> investigative and analytic process to the jury, the
> psychiatrists for each party enable the jury to make its most
> accurate determination of the truth on the issue before them.

Ake, 470 U.S. at 81.

Here, defendant will likely argue that he is not guilty of

Obstruction of Justice or False Statements because he lacked the

requisite mental state to commit these crimes.  Defendant should not

be able to make such a claim without the government being afforded

the opportunity to rebut his claim through its own independent expert
examination.  McSherry, 226 F.3d at 156 (explaining that a defendant
cannot present a one-sided explanation of his conduct "based solely
on what [he told an] . . . expert[]" and that "if the defense relies
on expert testimony as to the defendant's mental state, it is
estopped from depriving the government of an opportunity to examine
the defendant") (internal quotations omitted).  Rather, the
government should be permitted to test the validity of defendant's
expert's conclusions.  The only way for it to do so effectively is to
have an independent neuropsychologist examine defendant.  Id. at 157
(explaining that "[t]he district court order afforded the government
no more than rough parity in terms of access to the information that
would allow the government's experts to arrive at competing
conclusions") (emphasis added).  An independent examination permits
the government to call its own expert in rebuttal and present
"competing conclusions," thus providing the jury with
counterbalancing testimony to better enable it to make an informed
decision about defendant's "condition."  Whether defendant possessed
the requisite mens rea is the central issue in this case, and
defendant should not be permitted to present the jury with one-sided,
and potentially misleading, testimony on this issue.

    **C.  A Defense "Observer" Should Not Be Present During
Defendant's Interview Because it Would Seriously Disrupt
and Undermine the Integrity of the Examination**

    Defendant claims that a defense observer must attend the
interview portion of the government's expert's evaluation "to
preserve [defendant's] Fifth and Sixth Amendment rights."  (Rodriguez
Decl. ¶ 5.)  Defendant's Fifth and Sixth Amendment rights, however,
are not implicated by an independent mental examination after he puts

10

his own mental condition at issue.  See Byers, 740 F.2d at 1113, 1121-22 (analyzing cases and rejecting Fifth and Sixth Amendment claims).  Further, the Supreme Court has made clear that "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination."  Estelle v. Smith, 451 U.S. 454, 471 n.14 (1981) (quoting opinion of Fifth Circuit Court of Appeals).  Defendant's position is simply untenable, unsupported by both case law and industry standards, and the Court should reject it.

>        1.    An Independent Mental Evaluation Does Not Implicate
>              Defendant's Fifth Amendment Rights

It is well-settled that if a defendant announces an intention to introduce psychiatric evidence to support a mental condition claim, a court-ordered independent mental examination of that defendant by a government expert does not violate his privilege against self-incrimination.  See Halbert, 712 F.2d at 390 ("After raising the issue of mental capacity, [the defendant] cannot complain that [the court-appointed psychiatrist] used [the defendant's] statements against him."); see also United States v. Handy, 454 F.2d 885, 888-89 (9th Cir. 1971) ("It would indeed be anomalous if [a] defendant were permitted to offer psychiatric testimony to support his defense of insanity, and by refusing to submit to an examination by a court-appointed psychiatrist preclude the Government from offering testimony to the contrary.").

Although the grounds for the decisions vary, see Byers, 740 F.2d at 1111-13 (analyzing various justifications advanced by the courts), the overarching rationale can be described as one of fundamental fairness and judicial common sense, taking practical considerations into account in determining the reach of the Fifth Amendment

privilege against self-incrimination.  As the <u>Byers</u> Court explained,
when a defendant introduces psychiatric testimony to show why he
should not be punished for a crime, "the [government] must be able to
follow where he has led."  <u>Id.</u> at 1113.  To hold that the Fifth
Amendment prevents a compelled independent examination in this
circumstance would deprive the government of the only adequate means
to meet the defense expert's testimony.

Here, defendant has put his mental condition at issue by
noticing his intent to call an expert to opine on his mental
condition.  (Dkt. 215.)  The only way for the government to meet this
evidence is through an examination of defendant by its own mental
condition expert.  A standard mental examination consists of both an
interview portion and a testing portion.  The interview portion of
this examination – which defendant claims implicates his Fifth
Amendment rights – would not be necessary had defendant not <u>made</u> it
necessary; the government is not attempting to compel defendant's
statements for its case-in-chief.  Importantly, the government has
agreed to: (1) videorecord the interview portion of its expert's
evaluation; and (2) against the preferences of its expert, limit the
interview questions such that its expert cannot ask defendant about
his offense conduct.  These concessions remove any concerns that the
government's expert might unintentionally infringe on defendant's
Fifth Amendment rights (which do not exist in the context of this
examination).  In sum, a defense observer is not necessary, and
defendant cannot now hide behind the Fifth Amendment when he opened
the door to this inquiry.

2.   An Independent Mental Evaluation Does Not Implicate Defendant's Sixth Amendment Rights

The Sixth Amendment "entitles a defendant to notice and an opportunity to consult with counsel before a psychiatric examination." Garcia, 739 F.2d at 442 (emphasis added).  Such consultation permits a defendant who is "facing such an exam [to] make decisions with significant legal consequences." Id.  After consultation, a defendant "may wish to refuse to submit to the government examination and risk exclusion of his own expert testimony at trial." Id.; see also Fed. R. Crim. P. 12.2(d)(1) (permitting district court to exclude a defendant's expert evidence if he fails to "submit to an examination when ordered").

The government has no objection to defendant consulting in such a manner with his attorneys before its expert's evaluation, as that is his Sixth Amendment right.  However, to the extent that defendant seeks to have an attorney attend his examination by the government's expert to consult with throughout the interview, or to selectively answer questions put to him, such consultation and selective answering is inappropriate.  Granting a defendant and his attorney the power to merely "skip" certain questions obviously would hamper an expert's ability to gather facts, conduct a proper, independent evaluation, and reach valid and clinically-supportable conclusions. Defendant's proposed limitation would subvert the very purpose of the government's examination -- to independently examine defendant to test the validity of his expert's conclusions. See Byers, 740 F.2d at 1113, 1121-22 (D.C. Cir. 1984) (analyzing cases and rejecting Fifth and Sixth Amendment claims).  And as noted above with respect to defendant's Fifth Amendment concerns, any concerns regarding the

13

government's expert infringing on defendant's right to be free from self-incrimination should be eliminated by the government's agreement that its expert will not ask defendant any questions related to his offense conduct.

        3.   <u>The Presence of a Third-Party Defense Observer Is Against Industry Standards</u>

     Even if defendant's attorneys merely observed the government's expert's examination, their presence would still undermine the reliability of the examination.  <u>Estelle</u>, 451 U.S. at 471 n.14 (1981) (quoting opinion of the Fifth Circuit of Appeals: "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination.")

     Similarly, the National Academy of Neuropsychology has explained that the presence of an attorney "may represent a threat to the validity" of an examination:

> In general, neuropsychologists should have the right to carry out their examination in a manner that will not in any way jeopardize, influence or unduly pressure their normal practice.
>
>    . . .
>
> [A] psychological testing environment [should] be distraction free.
>
>    . . .
>
> The presence of a third party observer introduces an unknown variable into the testing environment which may prevent the examinee's performance from being compared to established norms and potentially precludes valid interpretation of the test results. . . . Observer effects can be magnified by the presence of involved parties who have a significant relationship with the patient (<u>e.g.</u>, legal representatives who have a stake in the outcome of the examination).  Thus, the presence of third party observer during formal testing may represent a threat to the validity and reliability of the data generated by an examination conducted under these circumstances, and may compromise the valid use of normative data in interpreting test scores[.]

Bradley Axelrod, et al., Presence of Third Party Observers During
Neuropsychological Testing: Official Statement of the National
Academy of Neuropsychology (July 1, 2000) (Rodriguez Decl., ¶ 10, Ex.
1.)

Approximately twenty years later, in 2021, the National Academy
of Neuropsychology confirmed its position, again emphasizing "[t]he
potential deleterious effects of [third party observers that] are
particularly problematic in the medicolegal or forensic context"
since these evaluations are often adversarial, and "entail adherence
to a Court Order." See Tannahill Glen, et al., Update on Third Party
Observers in Neuropsychological Evaluation: An Interorganizational
Position Paper (March 9, 2021) (Rodriguez Decl., ¶ 11.)  Indeed,
while clinical assessments unrelated to court proceedings often
involve follow-up contacts and repeat examinations, forensic
evaluators like the parties' experts here only have one opportunity
for diagnosis, so "any variable, however small, [] may adversely
affect the neuropsychological evaluation [and] should be guarded
against."  Id.  The National Academy of Neuropsychology further
recognized that requests for third-party observers are often "a legal
tactic for attorneys attempting to limit or even preclude
neuropsychological assessment[,] which potentially limits the
availability of impactful evidence to the trier of fact."  Id.

Here, the government's expert concurs with the National Academy
of Neuropsychology's position, and believes that a third party
observer would so drastically affect the integrity of his evaluation
that he would be required to recuse himself as an expert if ordered
by this Court to proceed in this way.  (Id. ¶ 10.)  For all of these
reasons, this Court should order defendant to submit to an

1    independent evaluation by the government's expert -- free of any

2    defense observer -- to guard against any "deleterious effects" and

3    "threat[s] to the validity and reliability of the data generated by

4    [the] examination."  To the extent that defense counsel believes any

5    impropriety will occur (it will not), the examination will be

6    videorecorded.[7]  For the foregoing reasons, if the Court compels

7    defendant to submit to an evaluation, it should not permit anybody

8    from the defense team to be present.

9        **D.  The Court Should Order Defendant to Produce Defense Expert
        Discovery**

10

11       Defendant contends, with respect to his mental condition expert,

12   that he is only required to produce a complete statement of his

13   expert's opinions and "the bases and reasons for them," pursuant to

14   FRCP 16(b)(1)(C), and nothing more.  Defendant is incorrect.

15       Defendant is required to disclose to the government the tests

16   conducted by defendant's expert for the expert's opinions under both

17   Rule 16(b)(1)(C) and Rule 705.  First, the government is a party to

18   this litigation and the discovery rules compel defendant to produce

19   discovery in this litigation.

20       Moreover, FRCP 16(b)(1)(C) and FRE 705 require defendant to

21   produce the discovery sought by the government.  FRCP 16(b)(1)(C)

22   provides that "if the defendant has given notice under Rule 12.2(b)

23   of an intent to present expert testimony on the defendant's mental

24   condition," he must disclose the information required by FRCP

25

26       [7] The government's expert and the Academy of Neuropsychology
     also frown upon videorecording evaluations, but the government has
27   made this concession (in consultation with its expert) at the request
     of defense counsel and to eliminate any concerns regarding the
28   propriety of the government's expert's evaluation.  (Rodriguez Decl.
     ¶ 4.)

16(b)(1)(C)(iii), which include a complete statement of all of

defendant's expert's opinions and the bases and reasons for them.

The Advisory Committee Notes explain the purpose of this rule as

follows:

> New subdivisions (a)(1)(E) and (b)(1)(C) expand federal
> criminal discovery by requiring disclosure of the intent to
> rely on expert opinion testimony, what the testimony will
> consist of, and the bases of the testimony. The amendment
> is intended to minimize surprise that often results from
> unexpected expert testimony, reduce the need for
> continuances, and to provide the opponent with a fair
> opportunity to test the merit of the expert's testimony
> through focused cross-examination. . . .

Fed. R. Crim. P. 16 Advisory Committee Notes, 1993 Amendment; see

also United States v. Jackson, 51 F.3d 646, 651 (7th Cir. 1995)

(explaining that "[o]ther contexts, such as cases involving technical

or scientific evidence, may require greater disclosure, including

written and oral reports, tests, investigations, and any other

information that may be recognized as a legitimate basis for an

opinion under [FRE] 703.").

Moreover, FRE 705 provides that an expert "may . . . be required

to disclose the underlying facts or data [of her opinion or

inference] on cross-examination."  Fed. R. Evid. 705.  Thus, the rule

assumes that a cross-examiner will have advance knowledge of the

facts essential for cross-examination.  See id. Advisory Committee

Notes ("The answer assumes that the crossexaminer had the advance

knowledge which is essential for effective cross-examination. . . .

[A court has] discretionary power . . . to require preliminary

disclosure").

These authorities establish that the government's request for

Defense Expert Discovery is reasonable and supported by the discovery

rules.  Defendant has put his mental condition at issue and the discovery rules mandate that he disclose the data supporting his expert's conclusions, just as the government will.  Moreover, if defendant contends that FRE 705 does not require disclosure of the requested data until his expert is cross-examined, the Court should reject this argument and compel production of the discovery requested by the government in the interest of fairness and judicial efficiency.

Indeed, the government's expert will naturally require time to review all discovery related to defendant's expert's "cognitive [tests], academic achievement [tests], and questionnaires examining psychological functioning" to be able to opine on defendant's expert's conclusions and methodology, which is vital to the government being able to effectively cross-examine defendant's expert.  This Court oversaw this exact process in <u>United States v. Fantraya Carter</u>, CR 20-250-DMG.  There, the parties timely exchanged expert reports, expert notes, and all raw testing data in advance of trial, because the testing conducted by each mental condition expert served as the bases for their respective opinions.  The parties were then able to conduct "focused cross-examination," as FRCP 16 contemplates, by exploring each expert's interpretation of the raw testing data, including the way in which each expert scored the tests based on the defendant's test responses.  Here, without access to the Defense Expert Discovery, the government will not be able to prepare for or conduct the same "focused cross-examination."  That is particularly important here -- as it was in <u>Carter</u> -- because defendant's state of mind at the time of the offenses will be the central issue at trial.  At bottom, the government is not asking for

18

more than it is willing to give: the government  will readily produce
its expert's report, notes, and all raw testing data related to his
evaluation when ready.

### E. Defendant Is Also Required to Provide Rule 16 Disclosures Related To Any Expert Defendant Intends to Call in His Case-in-Chief

Defendant has triggered his expert disclosure obligations under
FRCP 16(b)(1)(C)(i) by noticing his intent to introduce mental
condition expert evidence.  As discussed in more detail below, these
obligations broadly apply to "any testimony that the defendant
intends to use under Federal Rule of Evidence 702, 703, or 705."
Fed. R. Crim. P. 16(b)(1)(C)(i) (emphasis added).  The government
respectfully requests that this Court order both parties to produce
such expert disclosures by December 23, 2025, to provide both parties
sufficient time to meet each other's expert evidence.

#### 1. Defendant Triggered His Expert Disclosure Obligations Related to All Experts By Filing His Rule 12.2(b) Notice

On September 29, 2025, defendant filed his FRCP 12.2(b) Notice
indicating his intent to introduce expert evidence, in his case-in-
chief, relating to a mental disease or defect or any other mental
condition bearing on the issue of his guilt.  (Dkt. 215.)  FRCP
16(b)(1)(C)(i), entitled "Duty to Disclose," states:

> At the government's request, the defendant **must disclose** to the government, in writing, the information required by [16(b)(1)(C)(iii)] for **any testimony** that the defendant intends to use **under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial**, if:
>
> - the defendant requests disclosure under (a)(1)(G) and the government complies; **or**
>
> - **the defendant has given notice under Rule 12.2(b)** of an intent to present expert testimony on the defendant's mental condition.

19

1  (emphasis added).

2      Simply put, defendant has filed his FRCP 12.2(b) notice, the

3  government has requested reciprocal discovery, including all expert-

4  related discovery, and defendant now <u>must</u> provide Rule 16 disclosures

5  for "any [expert] testimony" he intends to elicit in his case-in-

6  chief.

7              2.    <u>Defendant's Position That He Triggered Only His Duty
                     To Provide Expert Disclosures Related to His Mental
8                    Condition Expert Is Untenable and Should Be Rejected
                     By This Court</u>

9

10      After the defendant filed his FRCP 12.2(b) notice on September

11  29, 2025, the government requested defendant's Rule 16 expert

12  disclosures for any and all experts defendant intends to call in his

13  case-in-chief.  (Rodriguez Decl. ¶ 9.)  Defendant, however, has taken

14  the position that an FRCP 12.2(b) notice only triggers Rule 16

15  disclosures for experts related to FRCP 12.2, <u>i.e.</u>, mental condition

16  experts.  (<u>Id.</u>)

17      Defendant's position contravenes the plain language of the rule.

18  Rule 16's use of the phrase "any testimony" supports the government's

19  (plain) reading, as does its citation to FRE 702 (Testimony by Expert

20  Witnesses), FRE 703 (Bases of an Expert's Opinion Testimony), and FRE

21  705 (Disclosing the Facts or Data Underlying an Expert's Opinion),

22  which are the evidentiary rules regarding <u>all</u> experts, not

23  exclusively mental condition experts.

24      District courts in this Circuit have also embraced this plain

25  reading of FRCP 16.  <u>See</u> <u>United States v. Larkin</u>, 2015 WL 3555295, at

26  *1 (D. Nev. June 5, 2015) ("Rule 16(b)(1)(C)'s disclosure

27  requirements are invoked when the defendant requests similar

28  disclosure from the government **or** gives notice of an intent to

20

present expert testimony on her mental condition under Rule 12.2(b)")
(emphasis added); <u>United States v. Williams</u>, 2010 WL 11805539, at *2
(D. Haw. Sept. 24, 2010) ("Regarding expert witnesses, a defendant
must produce a written summary of testimony intended for use as
evidence at trial, but only if the government complies with the
defendant's FRCP 16(a)(1)(G) disclosure request, **or** if the defendant
gives an FRCP 12.2(b) notice of intent to present expert testimony on
his mental condition.") (emphasis added).

      3.   <u>This Court Should Exercise Its Authority to Set A Reasonable Expert Disclosure Deadline That Will Avoid Any Further Trial Continuances</u>

Local Criminal Rule 16-1 provides that "defendant must disclose
to the government the expert testimony to be used in the defendant's
case-in-chief no later than 14 days before trial," which the parties
anticipate will be January 6, 2026.  (Rodriguez Decl. ¶ 2.)  The
government, however, is requesting that this Court exercise its
authority under FRCP 16, FRCP 57(b), and FRE 102, and require that
all expert disclosures be produced (by both parties) no later than
December 23, 2025, which is four weeks before trial.

Now that the defendant has triggered his expert disclosure
obligations, the government's request for a December 23, 2025 expert
disclosure deadline is not only reasonable (especially given the
holidays), but necessary to prevent any further delays of this trial.
When the government filed its <u>ex parte</u> application for an order
setting an expert disclosure deadline on August 29, 2025 (Dkt. 201),
which it incorporates by reference, it anticipated that some time
beyond the two weeks prior to trial articulated by the Local Rules
would be required for: (1) the government to retain a rebuttal mental
condition expert, if necessary, and schedule an examination between

its expert and defendant; and (2) the parties to litigate any expert-related issues.  Both of these concerns have played out in real time over the past month: the government's expert has had limited availability to conduct his evaluation, given his busy professional calendar, and despite efforts to resolve as many disagreements as possible through meet and confers, the parties are ultimately litigating the issues referenced in this Application through an expedited briefing schedule.  And while the parties were able to agree that the government's expert could evaluate defendant on October 23, 2025, the government's expert requires three weeks to generate his expert report.  Thus, absent the Court's scheduling conflicts and the parties agreement to continue the trial for the reasons outlined in the stipulation, the government would not have received its expert discovery to produce to defendant until November 13, 2025, and thus would have had to move the Court ex parte for a brief continuance of the November 4, 2025 trial date.  Of course, this is no longer an issue given the anticipated continuance of the trial date to January 20, 2026.  These issues, however, generally underscore the delays that often accompany expert evidence at trial.

Here, if defendant were to call any non-mental condition experts at trial[8], the government would need time to: (1) retain a rebuttal expert for testimony or consultation purposes, if necessary; (2) consider challenging the qualifications of any expert to testify as such; (3) review (and have its rebuttal expert review) any expert disclosures and related discovery; and (4) consider challenging the sufficiency of any expert disclosures and related discovery.  Given

---

[8] The defendant has not indicated the type or quantity of non-mental condition experts he may seek to call.

the way this matter has proceeded to date, the holiday schedule, and

the very recent example of the time required by the parties to

resolve matters related to its mental condition experts, a December

23, 2025 expert disclosure deadline would permit the parties to

resolve any other expert issues in advance of the January 20, 2025,

trial and avoid any further trial continuances.

Further, the government's request comports with expert

disclosure deadlines applicable to all criminal cases set by other

judges in this District.  The Honorable Fernando L. Aenlle-Rocha and

the Honorable Cynthia Valenzuela require parties to provide expert

disclosures no later than 35 days before the final pretrial

conference, the Honorable Stanley Blumenfeld, Jr. requires defendants

to provide expert disclosures no later than 30 days before trial, and

the Honorable Fernando M. Olguin requires defendants to provide

expert disclosures no later than five weeks before trial.  (See

Rodriguez Decl. ¶ 12-15, Exs. 3-6.)

In sum, the government seeks as order clarifying that defendant

must provide Rule 16 compliant expert disclosures to the government

no later than December 23, 2025, for any and all experts he intends

to call in his case-in-chief.  If defendant fails to provide such

disclosures, exclusion is the appropriate remedy.  See United States

v. Ornelas, 906 F.3d 1138, 1150-51 (9th Cir. 2018) (holding that

district court did not abuse its discretion in excluding defense

expert that was disclosed after the district court's disclosure

deadline because the district court was simply upholding its pretrial

order); see also United States v. W.R. Grace, 526 F.3d 499, 514 (9th

Cir. 2008) (holding that district court did not abuse its discretion

in excluding experts not timely disclosed).

**F.    If Defendant Fails to Submit to an Examination or Produce Expert-Related Discovery, the Court Should Preclude Defendant's Mental Condition Expert from Testifying**

If this Court grants the government's Application and defendant refuses to produce expert-related discovery or submit to a mental examination without the presence of a defense observer, the government respectfully requests that defendant be precluded from presenting at trial evidence of a mental "condition" or arguing the same.  FRCP 12.2(d)(1)(B) specifically authorizes this sanction.

**IV.   CONCLUSION**

For all the foregoing reasons, the government respectfully requests that the Court order: (1) defendant to submit to an independent mental examination by the government's expert without the presence of a defense observer; (2) defendant to produce all requested Defense Expert Discovery as to his mental condition expert; and (3) the parties to provide Rule 16 disclosures, for any experts either party intends to use in its case-in-chief, by December 23, 2025.